Louis J. Germon v. Commissioner.
Germon v. Commissioner
Docket No. 54864.
United States Tax Court
T.C. Memo 1956-159; 1956 Tax Ct. Memo LEXIS 141; 15 T.C.M. (CCH) 795; T.C.M. (RIA) 56159; June 29, 1956
*141 Petitioner filed joint income tax returns with his wife, Bertha A. Germon, for the years 1947, 1948, and 1949. Respondent determined that petitioner's wife realized unreported income from some 12 real estate transactions during those years and that the failure to report such income was due to fraud. 1. Held, for failure of proof, the deficiencies determined by respondent are sustained. 2. Held, further, for failure of proof, the additions to tax for fraud are not sustained. 3. Held, further, having filed income tax returns jointly with his wife, petitioner is liable for any deficiencies in tax on their joint incomes. Jesse A. Hamilton, Esq., 521 North La Cienega Boulevard, Los Angeles, Calif., and Charles M. Farrington, Esq., for the petitioner. R. E. Maiden, *142 Jr., Esq., and Godfrey L. Munter, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies in income tax and additions to tax determined against Louis J. Germon under the provisions of the 1939 Code: Income Tax
Additions to Tax
Year
Deficiency
Sec. 293(b)
1947
$ 254.27
$ 127.14
1948
8,562.14
4,281.07
1949
5,325.72
2,662.86
The issues to be decided are: (1) Whether during the years 1947, 1948, and 1949 petitioner's wife, Bertha A. Germon, received taxable income in the amounts of $965.15, $30,927.71, and $22,513.80, respectively, from various real estate transactions in which she engaged; (2) if so, whether the failure to report such income on the joint income tax returns filed by petitioner and his wife for such years was due to fraud with the intent to evade the payment of taxes; and (3) whether petitioner, having elected to file joint income tax returns with his wife for these years, is liable for the tax and additions to tax with respect to the unreported income attributable to his wife. Certain concessions have been made by respondent which reduce the deficiencies *143 originally determined, and such adjustment will be taken into account under a Rule 50 computation. Findings of Fact Petitioner is the husband of Bertha A. Germon (hereinafter referred to as Bertha). For each of the years 1947, 1948, and 1949, he and his wife filed joint income tax returns on Form 1040 with the then collector of internal revenue for the sixth district of California. Each of such returns was signed by both spouses. During these years petitioner was employed as a "roofer" and Bertha was engaged in the real estate business. Prior to 1947, Bertha frequently entered into real estate transactions, as a co-partner, with one Pearl Wolff. During the years 1947, 1948, and 1949, Bertha was associated with various realty organizations. She was a partner in the M.G.M. Real Estate Co., a co-partnership composed of herself, her father, Matthew W. McClean, Sr., and her brother, Matthew W. McClean, Jr. In addition, Bertha and her two brothers, Matthew W. McClean, Jr., and Edward A. McClean, formed Flintridge Heights, Inc. They were its sole stockholders and Bertha acted as its secretary. She was also an officer of Benedict Heights, Inc., another corporation engaged in real estate *144 activities, and her brother, Matthew W. McClean, Jr., was a stockholder therein. The petitioner herein was secretary of that corporation for a short time. Bertha maintained such books and records as were kept by the M.G.M. Real Estate Co. These books and records were not adequate to accurately reflect its income. Bertha was assisted by a certified public accountant who prepared the partnership's income tax return. He advised her that its books and records were inadequate, but no action was taken to correct this deficiency. In 1946, Bertha conceived the plan of entering into real estate transactions under an assumed identity. One of her reasons for the adoption of a ficitious identity was that she might pose as an agent of such fictitious person and thus avoid making decisions. This procedure also eliminated the necessity of her husband's signature on various documents. In pursuance of this plan, Bertha adopted the name "Mary Ellen Anderson." She rented a room for "Mary Ellen Anderson" in order that she might have an address where mail to such fictitious person might be delivered; she filed statements of identity in the name of "Mary Ellen Anderson" with escrow companies with which *145 she did business; and, to maintain the concealment of her identity as "Mary Ellen Anderson," Bertha, as a notary public, would notarize the signature of "Mary Ellen Anderson." During the years here in issue, Bertha did not reveal that she was "Mary Ellen Anderson" to her husband, her father, or her brothers, even though she was intimately associated with them in various real estate activities. When buying and selling property under her fictitious identity, she would occasionally pay a brokerage fee to the M.G.M. Real Estate Co. Respondent determined that Bertha derived income from the following real estate transactions which was not reported on the returns which she filed jointly with her husband for the years here in issue. The first ten of such transactions were conducted by Bertha under her fictitious name "Mary Ellen Anderson" and the last two were conducted by her under her true identity in conjunction with her brother, Matthew W. McClean, Jr.: Date
Purchase
Purchased
Cost
Expenses
Sold To
1/7/47
$ 800.00
$ 0
Theo. Elias
1/7/47
800.00
0
Theo. Elias
2/8/47
1,100.00
8.60
12/23/46
750.00
22.60
Theo. Elias
$ 3,450.00
$ 31.20
1/30/48
$ 2,000.00
$ 52.76
Morton & Anderson
12/10/47
3,250.00
15.00
Olsen & Paulson
12/31/47
25,000.00
23.90
Benedict Hgts., Inc. $30,250.00
$ 91.66
Flintridge Hgts., Inc.
7/29/49
$ 6,390.48
$ 12.00
R. J. Hartwell
11/15/49
2,300.00
63.52
Adams Const. Co.
4/15/49
10,000.00
309.50
Flintridge Hgts., Inc.
10/25/48
11,200.00
25.00
Flintridge Hgts., Inc.
$29,890.48
$410.02
*146 Date
Date
Selling
Selling
Purchased
Sold
Price
Expenses
Profit *
1/ 7/47
1/ 7/47
$ 1,075.00
$ 91.25
$ 183.75
1/ 7/47
1/ 7/47
1,075.00
88.75
186.25
2/ 8/47
2/ 8/47
1,465.50
21.70
335.20
12/23/46
6/ 9/47
1,075.00
42.45
259.95
$ 4,690.50
$ 244.15
$ 965.15
1/30/48
1/30/48
$ 2,350.00
$ 100.69
$ 196.55
12/10/47
1/20/48
4,250.00
294.04
690.96
12/31/47
5/27/48
30,000.00
8/ 6/48
26,000.00
935.90
30,040.20
$62,600.00
$1,330.63
$30,927.71
7/29/49
8/ 1/49
$ 7,500.00
$ 57.52
$ 1,040.00
11/15/49
11/15/49
2,400.00
34.17
2.31
4/15/49
6/ 1/49
30,000.00
500.00
9,595.25 **
10/25/48
6/ 1/49
35,000.00
22.50
11,876.24 **
$74,900.00
$ 614.19
$22,513.80
*147 All the preceding transactions were conducted through escrow companies, which would deliver title to the purchaser only after the various conditions to the escrow agreement had been fulfilled, or after the seller had submitted a statement indicating that payment of the consideration or performance of any required condition had been secured outside of escrow. During the years 1947, 1948, and 1949, Bertha, under the assumed name "Mary Ellen Anderson," entered into eight of the above-listed real estate transactions with various private individuals which resulted in a total profit of $965.15 for the year 1947, $887.51 for the year 1948, and $1,042.31 for the year 1949. The profits on these sales were not reflected in the books and records of the M.G.M. Real Estate Co. and were not reported on the joint returns filed by Bertha and petitioner. On December 31, 1947, Bertha, under the name "Mary Ellen Anderson," purchased a tract of land comprising approximately 60 acres for the sum of $25,000. On May 27, 1948, she sold approximately 30 acres of this tract to her brother, Matthew W. McClean, Jr., for the sum of $30,000, and he, in turn, immediately resold it to Benedict Heights, Inc. *148 This sale was negotiated through the M.G.M. Real Estate Co. and a commission of $625 was paid by the seller. At the time of this transaction, Matthew W. McClean, Jr., was not aware that the seller, "Mary Ellen Anderson," was, in reality, his sister. Escrow arrangements were handled by the Santa Monica Escrow Company, and on May 27, 1948, Bertha, acting as "Mary Ellen Anderson," submitted the following signed escrow instruction to the escrow company stating that she had been paid outside of escrow: "Santa Monica Escrow, Dear Madam, "I have received from the M.G.M. Real Estate Co. all of the money due me in the escrow that you are selling for me to the Benedict Heights Corporation. Signed. Mary Ellen Anderson, Mary Ellen Anderson." Subsequently, in connection with an accounting of the funds expended by Benedict Heights, Inc., which was submitted to the Superior Court of the State of California, a schedule was presented by Bertha reporting that Benedict Heights, Inc., had disbursed the sum of $30,000 for property. On August 6, 1948, Bertha, again using the name "Mary Ellen Anderson," sold 26 acres of the 60 acre tract to Flintridge Heights, Inc., in which she and her two brothers *149 were the sole stockholders, for the sum of $26,000. Bertha did not reveal to her brothers that it was she, personally, rather than "Mary Ellen Anderson" who was selling this property to the corporation. This transaction was handled through the Santa Monica Escrow Company and, on August 6, 1948, Bertha submitted the following statement to the escrow company advising it that she had been paid, out of escrow, the total consideration for the property: "* * * You are hereby advised and instructed that the total consideration of the above numbered escrow has been received outside of escrow and your company shall not be concerned herewith. /s/ Mary Ellen Anderson Approved /s/ Edward A. McClean, /s/ Bertha A. Germon" No part of the profit realized by Bertha on the sale of this 60 acre tract to Benedict Heights, Inc., and Flintridge Heights, Inc., was reported on the joint return which she filed with her husband for the year 1948. In 1949, Bertha and her brother, Matthew W. McClean, Jr., entered into an agreement to sell land to Flintridge Heights, Inc., as joint venturers. In pursuance of this plan, Matthew W. McClean, Jr., purchased two pieces of property for a total consideration *150 of $21,200. This property was then sold to Flintridge Heights, Inc., in two separate sales, for the amounts of $30,000 and $35,000, respectively. Various payments on account of the purchase price were made by Flintridge Heights, Inc., to the escrow company, and Bertha and her brother, Matthew W. McClean, Jr., submitted instructions to the escrow company as to the disposition of such payments. In an accounting of Flintridge Heights, Inc., monies which was submitted by Bertha to the Federal District Court on September 15, 1952, it was indicated that the corporation had disbursed a total of $39,714.35 as payments for land. The difference between the purchase price received through escrow and the total purchase price was made up by a trust deed on the property in favor of Matthew W. McClean, Jr., and his wife and Bertha and her husband. These transactions were not reported on the joint income tax return filed by Bertha and petitioner for the year 1949. In the year 1951, Bertha pleaded guilty to a charge of forgery in the Superior Court of the State of California, in and for the County of Los Angeles. Also in that year, Bertha pleaded guilty to a charge of grand theft in that same court. *151 No part of the deficiencies herein are due to fraud with the intent to evade the payment of taxes. Opinion RICE, Judge: We must decide whether petitioner's wife, Bertha Germon, realized income on some 12 real estate transactions during the years 1947, 1948, and 1949 which was not reported on the joint returns which she and petitioner filed for such years, and, if so, whether the failure to report such income was due to fraud. At the outset, we will dispose of the argument raised by petitioner to the effect that he is not liable for deficiencies or fraud penalties attributable to income realized by his wife. It has been firmly established that taxpayers taking advantage of the privilege of filing joint returns pursuant to section 51(b) of the 1939 Code incur a joint and several liability. , affd. (C.A. 6, 1949). Each spouse is liable for the full tax and any penalties determined to be due on the joint incomes of both, and it is immaterial by whom the income was received or whether the fraud was that of the husband or the wife. With respect to the deficiencies here in issue, considerable doubt remains *152 in our minds as to the true nature of certain of the transactions and we still have no clear picture enabling us to trace the source and disposition of the sums involved in the four largest transactions which account for the major part of the deficiencies. Although counsel for petitioner presented many vehement and lengthy arguments at the hearing herein, no brief has been filed by petitioner in this proceeding. We have, nevertheless, given careful consideration to all the evidence which has been introduced, and, after detailed analysis of each of the 12 transactions in issue, it is our conclusion that petitioner has failed to overcome the presumptive correctness of respondent's determination that such transactions resulted in some $54,406.66 of unreported income during the three years here in issue. A review of these transactions may best be approached by separating them into two groups, namely, those eight transactions which involve sales to private individuals and the remaining four transactions between petitioner's wife and corporations in which she had a proprietary interest. With respect to the first group, Bertha admitted each of the eight sales and further admitted that she *153 had received a profit from certain of such sales. She testified that, in certain of these sales, she had shared one-half of her profit with one Pearl Wolff. It appears that prior to the years here in issue, Bertha did occasionally engage in certain real estate transactions as a partner with Pearl Wolff. However, Pearl Wolff testified that in each transaction in which she participated her name would appear upon the escrow papers and it was her impression that she had not participated with Bertha in any of the transactions here in issue. Examination of the escrow papers pertaining to the instant transactions fails to reveal the name of Pearl Wolff as a participant, and we must accordingly conclude that the profit realized on such transactions is attributable entirely to Bertha. Petitioner further contends that Bertha contributed the profit from certain of these eight transactions to the M.G.M. Real Estate Co. and he thus seems to argue that such transactions were conducted by her on behalf of the partnership rather than on her own behalf. But each of these transactions was conducted by Bertha under her fictitious name. Since she testified that during these years she kept her identity *154 as "Mary Ellen Anderson" secret from her partners in the M.G.M. Real Estate Co., this contention must be rejected as inherently improbable if not patently false. In addition, respondent's agent testified that, after a careful examination of the partnership records, he was unable to find any indication that such transactions or profits therefrom had been entered on the partnership books. Further, Bertha did not attempt to substantiate her testimony by introducing the records of the M.G.M. Real Estate Co. in order to show where the profits from such transactions might be reflected. The remaining four transactions here in issue involve sales to Benedict Heights, Inc., and Flintridge Heights, Inc., with total profits of $51,511.69 purportedly received by Bertha. Flintridge Heights, Inc., was a corporation wholly owned by Bertha and members of her family, and, while the record is not entirely clear with respect to the stock ownership of Benedict Heights, Inc., it appears that Bertha and petitioner were officers, Matthew W. McClean, Jr., was a stockholder, and that it, too, may have been a wholly owned family corporation. Bertha vigorously denied that she had realized a profit from these *155 four transactions, but her testimony regarding them afforded no enlightenment as to what had been done with the large sums of money involved. Her testimony was vague and inconsistent and its value is further weakened since her credibility was impeached by admissions that she had previously been convicted of charges of forgery and grand theft. Moreover, in the instant proceeding, she repeatedly denied the accuracy of statements which she had previously submitted in other legal proceedings and to the escrow agent. Under her assumed name, "Mary Ellen Anderson," Bertha purchased some 60 acres of land in December 1947. In May 1948 she sold approximately one-half of this tract for the sum of $30,000 to her brother, Matthew W. McClean, Jr., who, in turn, immediately resold it to Benedict Heights, Inc. He testified that at the time of this transaction, he was unaware that the seller was, in fact, his sister rather than "Mary Ellen Anderson." He further stated that he had paid "Mary Ellen Anderson" $30,000, and later modified this statement by saying that such sum was paid into escrow and then paid out according to the escrow instructions. However, the written escrow instruction which was *156 submitted into evidence indicates that the escrow company had been advised by "Mary Ellen Anderson" that the consideration for this property had been paid to her outside of escrow. Further evidence that Bertha may have received this money is the accounting submitted by Benedict Heights, Inc., to the Superior Court which lists a disbursement of $30,000 for the purchase of property. Although this statement was submitted by Bertha in connection with an accounting of Benedict Heights, Inc., at the hearing of the instant case, she denied its accuracy and contended that she had not received the $30,000 allegedly paid by the corporation for the property. Similarly, Bertha contended that although she sold 26 acres of the 60 acre tract to Flintridge Heights, Inc., for $26,000, she never actually received this sum. Respondent introduced into evidence the written escrow instructions signed by "Mary Ellen Anderson" which state that the consideration for this sale had been received outside of escrow. Bertha admitted submitting this statement to the escrow company but testified that the escrow instruction in connection with this sale, as well as those relating to the preceding sale, had been submitted *157 only in order that the escrows might be closed and title transferred by the escrow company. Thus, the record does not clearly establish that Bertha, in fact, received the $56,000 consideration for these two sales, but we are unable to understand how, if her identity actually was secret from her brothers at this time, she was able to persuade them that "Mary Ellen Anderson" would permit the escrows to be closed without receipt of the $56,000 purchase price of the property. The remaining two transactions involve a joint venture in which Bertha participated with her brother, Matthew W. McClean, Jr., during 1949. Matthew W. McClean, Jr., purchased two parcels of land which he then sold in two separate sales to Flintridge Heights, Inc., on behalf of the joint venture, for a total sum of $65,000. Bertha here also testified that she had never received any part of the consideration for these sales. When confronted at the hearing with an accounting of the funds of Flintridge Heights, Inc., which had previously been submitted to the Federal District Court and which showed that the sum of $39,714.35 had been paid for land, she said that this amount had been credited to Matthew W. McClean, *158 Jr., in escrow but that she had never received any part of it. However, the record indicates that the escrow agent for these two sales made cash payments to Bertha totalling $2,707. In addition, Matthew W. McClean, Jr., testified that a trust deed had been taken back from Flintridge Heights, Inc., for the balance of the purchase price not paid in cash, and that such trust deed had been recorded in his name and that of his wife and in the name of Bertha and her husband. The fair market value of this trust deed would, of course, represent taxable income to the recipients. Since no evidence was introduced as to the fair market value of such trust deed, it must be concluded that it was equal to the face value of the obligation it secured - thus, the difference between the sale price of $65,000 and the cash previously received, $39,714.35. The essential difficulty with respect to tracing the income from these four sales to Benedict Heights, Inc., and Flintridge Heights, Inc., seems to be that Bertha and also Matthew W. McClean, Jr., used the escrow agent as a banker. Instead of withdrawing sums which were paid into escrow by the purchaser of land, they would direct the escrow agent to *159 pay such amounts on their behalf to various other individuals. It is entirely possible that such payments may have been made on behalf of Flintridge Heights, Inc., or Benedictheights, Inc., and thus Bertha may have felt that she was realizing no profit from these transactions. However, it is clear that Bertha and the corporations are separate taxable entities, and that if the profits realized by her from the sale of property to these corporations were, in turn, used to defray corporate expenses, such expenditures must be considered as additional capital investments in the corporations. Although Bertha has strongly protested that she received no part of the consideration involved in the four sales which were made to Benedict Heights, Inc., and Flintridge Heights, Inc., no evidence other than her self-serving testimony has been introduced to show that the profits were not received by her. We must accordingly hold that petitioner has failed in his burden of proof and the deficiencies are sustained. We turn next to the additions to tax for fraud which have been determined by the respondent. Fraud must be proved by clear and convincing evidence and, since some doubt remains in our minds *160 that the failure to report the income from these transactions was due to fraud with the intent to evade the payment of taxes, the additions to tax for fraud cannot be sustained. By far the largest part of the deficiencies here in issue arise out of the four sales made to Benedict Heights, Inc., and Flintridge Heights, Inc. However, considerable doubt remains in our minds as to whether Bertha actually received all or most of the consideration from such four sales or whether she merely directed the escrow companies to disburse it to creditors of the corporations. Flintridge Heights, Inc., was eventually placed in involuntary bankruptcy and it is entirely possible that Bertha, if she did not directly receive the consideration from such sales, was unaware that she had realized a taxable profit. Her system of bookkeeping was so rudimentary and inadequate, regarding all of her transactions as a whole, that she may have believed that there was no net profit to report. The remaining eight sales in issue resulted in gains of approximately $1,000 during each of the three years in issue. It is true that Bertha admitted certain of these sales; but here, too, we are not convinced that the failure *161 to report them was due to fraud rather than to rudimentary and inadequate bookkeeping and, possibly, an ill-conceived notion that no over-all profit had been realized. Decision will be entered under Rule 50. Footnotes
*. This table incorporates various concessions made by respondent, subsequent to his determination of the deficiencies herein, regarding additional expenses of sale in connection with some of the above transactions. ↩
**. Gains from joint venture with M. W. McClean, Jr. ↩
Selling Price
$30,000.00
$35,000.00
Less: Adjusted Basis
$10,309.50
$11,225.00
Selling Expenses
500.00
10,809.50
22.50
11,247.50
Gain
$19,190.50
$23,752.50
1/2 taxable to Bertha
$ 9,595.25
$11,876.24